# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**CHARLES R. CIANCIOLA,**

              **Petitioner,**

      v.                                        **Case No. 05-CV-1264**

**JEFFREY ENDICOTT,**

              **Respondent.**

## DECISION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS

**I. PROCEDURAL HISTORY**

      Charles R. Cianciola ("Cianciola") is a person incarcerated pursuant to a state court judgment. On December 7, 2005, proceeding pro se, he filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1.) This court screened his petition in accordance with Rule 4 of the Rules Governing Section 2254 Cases and ordered the respondent to answer the petition. (Docket No. 3.) The respondent answered the petition on February 23, 2006. (Docket No. 8.) On October 22, 2007, the court received a letter from Cianciola wherein he asked the court to hold off resolving his petition until he was able to retain counsel.

      On April 28, 2008, counsel for Cianciola filed a notice of appearance. In light of counsel's appearance, the court permitted Cianciola the opportunity to file a supplemental brief, (Docket No. 12), which he did on June 30, 2008, (Docket No. 14). The respondent filed a response, (Docket No. 15, 21), and Cianciola has replied, (Docket No. 23). The pleadings on his petition are closed and the matter is ready for resolution. All parties have previously consented to the full jurisdiction of a magistrate judge. (Docket Nos. 5, 6.)

## II. FACTS

On April 17, 2002, following a jury trial, Cianciola was convicted of one count of First Degree Sexual Assault of a Child as a habitual criminal, in violation of Wisconsin Statute Sections 939.62 and 948.02(1). (Docket No. 1 at 27.) On July 29, 2002, he was sentenced to 15 years in prison. (Docket No. 1 at 27.)

## III. STANDARDS OF REVIEW

Where the state court adjudicates the merits of a petitioner's claim, this court may grant habeas corpus relief if the state court decision:

> (1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

As the Supreme Court explained in Williams v. Taylor, § 2254(d)(1) establishes two independent grounds on which a federal court can grant habeas corpus relief: (1) if a state court decision is "contrary to" clearly established federal law, as determined by the Supreme Court, or (2) if a state court decision involves an "unreasonable application" of clearly established federal law, as determined by the Supreme Court. 529 U.S. 362, 404-05 (2000); see also Washington v. Smith, 219 F.3d 620, 627-28 (7th Cir.2000). The "contrary to" standard requires a state court decision to be "substantially different from the relevant precedent of [the Supreme Court]." Williams, 529 U.S. at 405. For example, a state court decision applying a rule that contradicts the governing law set forth by the Supreme Court would qualify, as would a decision that involves a set of facts materially indistinguishable from a Supreme Court case that arrives at a different result. Id. at 405-06. By contrast, a state court decision that draws from Supreme Court precedent the correct legal rule and applies it in a factually distinguishable situation will not satisfy the "contrary to" standard, no matter how misguided the decision's ultimate conclusion. Id. at 406-07.

Under the "unreasonable application" prong of (d)(1), relief may be granted if the petitioner shows that, despite identifying the correct rule of law, the state court unreasonably applied it to the facts of the case. Williams, 529 U.S. at 404. An unreasonable application of federal law, however, is different from the incorrect or erroneous application of federal law. Boss v. Pierce, 263 F.3d 734, 739 (7th Cir. 2001) (citing Williams, 529 U.S. at 410). A federal court simply disagreeing with the state court decision does not warrant habeas relief-the decision's application of Supreme Court precedent must be so erroneous as to be objectively unreasonable. Middleton v. McNeil, 541 U.S. 433, 436 (2004); Yarborough v. Gentry, 540 U.S. 1, 5 (2003).

Under § 2254(d)(2), relief may be had where the petitioner demonstrates that the state court made an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Here again, an unreasonable determination is more than a determination that is simply incorrect or erroneous. Moreover, state court factual determinations are presumed correct, and the petitioner has the burden of rebutting the presumption of correctness by "clear and convincing evidence." § 2254(e)(1). Rice v. Collins, 546 U.S. 333, 339 (2006) (citing Miller-El v. Dretke, 545 U.S. 231, 240 (2005)).

**IV. ANALYSIS**

Cianciola seeks relief on five grounds. Cianciola asserts: (1) that his trial counsel was ineffective; (2) that the trial court improperly required expert testimony as foundation for evidence regarding his "normal" relationship with the alleged sexual assault victim; (3) that a defense witness was improperly excluded; (4) that his sentence violates double jeopardy; and (5) that the prosecutor's closing argument was improper. The court will address each of these arguments in turn.

*A. Ineffective Assistance of Trial Counsel*

To prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate that the Wisconsin court's decision was either contrary to, or based on an unreasonable application of, federal law. Williams v. Davis, 301 F.3d 625, 631 (7th Cir. 2002) (applying § 2254(d)(1) standards). The applicable federal law governing ineffective assistance claims is set forth in Strickland v. Washington, 466 U.S. 668 (1984). Strickland requires the petitioner to show: (1) his attorney's performance fell below an objective standard of reasonableness; and (2) the deficient performance caused him prejudice. 466 U.S. at 687-88 (1984); Roche v. Davis, 291 F.3d 473, 481-82 (7th Cir.2002); Montenegro v. United States, 248 F.3d 585, 590 (7th Cir. 2001). Courts review counsel's performance under the first prong deferentially, presuming reasonable judgment unless the factual record rebuts such a presumption. See Strickland, 466 U.S. at 689; Matheney v. Anderson, 253 F.3d 1025, 1039 (7th Cir.2001).

With regard to the prejudice element, the petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. See Strickland, 466 U.S. at 689; Matheney, 253 F.3d at 1039-40. If the court finds that the counsel's alleged deficiency did not prejudice the defendant under the second prong, the court need not consider the first prong of the Strickland test. Berkey v. United States, 318 F.3d 768, 772 (7th Cir. 2003).

1. Failure to Call a Rebuttal Expert

The Wisconsin Supreme Court held in State v. Jensen, 147 Wis. 2d 240, 256, 432 N.W.2d 913, 920 (1988), that "the circuit court may allow an expert witness to give an opinion about the consistency of a complainant's behavior with the behavior of victims of the same type of crime only if the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue." Subsequently, the Wisconsin Court of Appeals held that the state may not introduce Jensen

4

evidence by way of its retained expert when the defendant shows a compelling need for his own independent psychological examination unless the victim agrees to undergo an independent examination. State v. Maday, 179 Wis. 2d 346, 372, 507 N.W.2d 365, 372 (1993).

Cianciola sought an independent evaluation of the victim. The court granted the request but the victim refused to undergo an independent evaluation. Therefore, the court concluded that the state would be precluded from introducing Jensen evidence at trial. The court nonetheless said it would permit Beth Young-Verkuilen ("Young-Verkuilen"), a psychotherapist who treated the victim before and after the sexual assaults, to testify "about characteristics or the behavior of" the victim. (Tr. 3 at 10.) The court stated that if Young-Verkuilen testified about "characteristics or the behavior" of the victim, then the defense "can always call an expert witness to rebut whatever [it] think[s] needs to be rebutted in that evidence, if [the] expert is capable of doing that without an examination." (Tr. 3 at 10.)

Further, although the defense sought to preclude "other family members, friends, getting up [on the witness stand] and talking about [the victim's] behavior before, during or after, literally at any point in relation to those allegations," (Tr. 3 at 5), the court stated:

> [C]ertainly [the state] can have people testify about [the victim's] behavior both before and after, but if they're not offering any expert opinionss [sic], then this Court finds that . . . there is no requirement on the – to level any playing field on the part of the defense to have an examination of this child anymore.

(Tr. 3 at 11.)

When cross-examining the victim, Cianciola's attorney brought out the fact that the victim continued to voluntarily go to stay with Cianciola during the period the sexual assaults were occurring and that she delayed reporting the assaults for years. The court had previously cautioned Cianciola that if any evidence attempting to indicate that Cianciola and the victim had a "normal" relationship during the period of abuse would "open the door for the State to bring in their witness who is treatment counselor and to combat that evidence with whatever evidence they have on that

5

subject and on that issue." (Tr. 4 at 70.) Thus, in light of Cianciola's cross-examination of the victim, the prosecution sought to elicit Young-Verkuilen's expert opinion as to whether or not delayed reporting and a continued willingness to associate with the perpetrator were common characteristics of sexual assault victims in general. The court granted the prosecution's request but emphasized that Young-Verkuilen was permitted to offer expert conclusions only about sexual assault victims in general and not with respect to this specific victim. (Tr. 4 at 157.)

In response to the prosecutor's question of whether it was common for children to delay reporting a traumatic event, she responded: "Oh, I think that's probably more common than immediate reporting." (Tr. 4 at 169.) Further, when asked by the prosecutor if sometimes a victim of abuse may still have "some affinity towards the suspected abuser," she responded that if it was someone with whom the victim has a close, long-standing relationship with, such as a parent, the victim will "have a lot of ambivalent feelings about that relationship and sometimes the relationship with that person is even stronger and more, what we call enmeshed in my field, because of the abuse." (Tr. 4 at 169-70.)

Cianciola's attorney did not request an adjournment of the trial so that he would be able to retain an expert to rebut the testimony of the prosecution's expert. In cross-examination of Young-Verkuilen, Cianciola's attorney questioned her about the frequency she saw the victim and the general nature of the help Young-Verkuilen sought to provide the victim. Cianciola's attorney did not attempt any cross-examination as to the substance of Young-Verkuilen's expert opinions. The cross-examination of Young-Verkuilen spans less than three pages in the trial transcript. (Tr. 4 at 174-76.)

At the <u>Machner</u> hearing, Cianciola presented the report of Dr. Phillip Esplin wherein Dr. Esplin opined that there is no identifiable pattern of child behavior that could be used as proof that sexual abuse of a child occurred and that there might be any number of reasons as to why a child

6

might report that sexual abuse occurred long ago. (Ans. Ex. B at 28-29.) He further stated in his report that, contrary to popular perception, children do fabricate claims of sexual abuse. (Ans. Ex. B. at 29.)

The court of appeals determined that his trial counsel was not ineffective for failing to call an expert because Cianciola did not demonstrate that it would have been possible to find an expert to rebut the testimony of the prosecution expert. It determined that the only expert testimony that Cianciola proffered at the post-trial <u>Machner</u> hearing was testimony that was "entirely consistent" with that of the prosecution expert. (Ans. Ex. E at 8.)

The conclusions set forth in Dr. Esplin's report are not "entirely consistent" with those of Young-Verkuilen. It might not be true rebuttal in that Dr. Esplin takes the opposite view of Young-Verkuilen (i.e. that delaying reporting and the victim's willingness to voluntarily visit Cianciola indicates that a victim's allegations are untrue), but that is not to say Dr. Esplin's conclusions were not evidence that would have been valuable to Cianciola's defense. Instead of rebutting Young-Verkuilen's opinion, Dr. Esplin's testimony would have attempted to neutralize the effect of Young-Verkuilen's testimony.

Young-Verkuilen's testimony implies that delayed reporting and perhaps a greater affinity for an abuser are expected behaviors for a child victim of sexual assault. Young-Verkuilen is not equivocal with respect to a child victim's attitude towards an abuser; she does not say that some child victims may develop wholly negative feeling towards an abuser. From that, the jury could draw the conclusion that because the victim delayed reporting and continued to be willing to visit Cianciola, her sexual assault allegations are truthful. Dr. Esplin would have rebutted the prosecution's contention that any behavior would indicate that a sexual assault allegation is truthful.

Although the trial court spoke of defense counsel "opening the door" on cross-examination, when it was setting the parameters for Young-Verkuilen's testimony, (Tr. 4 at 157), based upon this

7

court's reading of the transcript of the trial court's ruling limiting the scope of expert testimony, (Tr. 3), the expert opinions offered by Young-Verkuilen were never foreclosed to the prosecution. The court precluded only expert opinions that were based upon an examination of the victim. The trial court made clear that it would permit discussion about the victim's behavior around the time of the assaults. Either party was entitled to call an expert to assist the jury in attempting to assess the victim's behavior.

The prosecution did so. The defense, although being explicitly informed that it would be permitted to call an expert to respond to any evidence introduced about the victim's behavior, (Tr. 3 at 10), made no effort to retain or call an expert at trial. However, the court is unable to conclude that, by itself, it was unreasonable for defense counsel to not retain its own expert. Rather, much of what a defense expert would have offered, for example that each sexual assault victim may behave differently, could have likely been elicited from Young-Verkuilen through cross-examination.

During the Machner hearing, Cianciola's trial attorney testified that in his decades of practice, he had never hired an expert under such circumstances, because he believes that the effectiveness of opinions regarding the behavior of the victim

> can be blunted with good cross-examination and knowledgeable cross-examination, and that if you have your own expert and you put him on the stand on that issue, they're also subject to cross-examination by the State which will also bring out many valid reports of sexual assaults which are accompanied by delayed reporting, so that it really doesn't – it kind of balanced out. So it balances out either way, whether you effectively cross-examine the State's witnesses or call your own and their value is underlined by the State's cross-examination.

(Tr. 7 at 22.)

Notwithstanding, Cianciola's attorney chose to engage in absolutely no cross-examination of Young-Verkuilen with respect to her expert opinions. (See Tr. 4 at 174-76.) If a reasonable attorney is reluctant to cross-examine an expert, not knowing what the expert may say, then the attorney should retain its own expert as the means for attempting to undermine the prosecution expert's

8

conclusions. In the present case, defense counsel should have known that an expert on the behavior of child sex assault victims would likely acknowledge that each victim may behave differently. During the pretrial motion hearing regarding the defendant's motion to conduct an evaluation of the victim, the defense expert testified that there are "no universally agreed upon set of characteristics that sexual abuse victims display." (Tr. 2 at 19.)

A reasonable defense attorney must make some effort to undermine the expert opinions of a prosecution witness. That may be accomplished through either cross-examination or by calling the defense's own expert. In the present case, Cianciola's attorney did neither, and thus the court finds Cianciola's attorney's performance was unreasonable. Therefore, the court must move on to the second prong of the <u>Strickland</u> analysis and determine whether this unreasonable performance prejudiced Cianciola.

The case against Cianciola rested entirely upon the victim's allegations. There was no physical evidence or other eyewitness testimony. Cianciola presented a general defense that no abuse occurred, which the prosecution sought to undermine by introducing the victim's allegations of many other incidents of similar abuse. Thus, any fact that indicated that it was more or less likely that the victim was telling the truth was crucial to the case. Nonetheless, the court is unable to conclude that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.

The case was one of credibility. The jury obviously found the victim's testimony to be believable and disbelieved the defendant's testimony. Upon review, Young-Verkuilen's testimony served a comparatively minimal role in supporting the victim's credibility. It simply sought to rebut the defense's implication that delayed reporting and a willingness of the victim to continue to associate with the perpetrator were behaviors inconsistent with a victim of sexual abuse. In light of the substantial evidence of numerous other incidents of abuse perpetrated by Cianciola against the

9

victim that was presented to the jury, the court is unable to conclude that had Cianciola's attorney effectively cross-examined Young-Verkuilen or called his own expert, and the jury was presented with evidence that the behaviors of a child are ineffective in determining whether a child was sexually abused, that the result would have been any different.

Further, it is important to note that this court's review of the decision of the court of appeals must be highly deferential. A petitioner is not entitled to a relief under § 2254 even if the federal court determines that the state court "applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable." Jackson v. Frank, 348 F.3d 658, 662 (7th Cir. 2003) (quoting Lockyer v. Andrade, 538 U.S. 63 (2003) (in turn quoting Williams v. Taylor, 529 U.S. 362, 411, 409 (2000))). Although this court disagrees with the court of appeals' statement that the conclusions set forth in Dr. Esplin's report were "entirely consistent" with those of Young-Verkuilen, nonetheless, the court finds that the court of appeals' ultimate conclusion that Cianciola was not denied the effective assistance of trial counsel was not a decision "lying well outside the boundaries of permissible differences of opinion," Jackson, 348 F.3d at 662 (quoting Hardaway v. Young, 302 F.3d 757, 762 (7th Cir. 2002)), and thus was not unreasonable.

### 2. Introduction of Other Acts Evidence

During his direct examination of Cianciola, Cianciola's attorney questioned him at length about his history of alcohol abuse. Cianciola contends that this was unreasonable and prejudicial. The court of appeals determined that Cianciola's attorney's decision constituted a reasonable trial strategy because emphasizing Cianciola's treatment successes could be seen as casting a favorable light upon Cianciola.

During the Machner hearing, Cianciola's attorney testified that once the jury heard that Cianciola told the police that it was possible that he could have sexually assaulted his daughter during an alcoholic blackout, it was important to emphasize Cianciola's recovery efforts. (Tr. 7 at

10

8.) Cianciola's attorney also considered discussion of Cianciola's history of alcohol abuse to be a potential tactical advantage because it could demonstrate to the jury that he was able to admit his faults and was a decent person. (Tr. 7 at 8.) Finally, Cianciola's attorney chose to introduce this evidence because Cianciola "very much wanted to because of his pride in that accomplishment." (Tr. 7 at 8.)

For these reasons, it is clear to this court that introduction of this evidence was a reasonable trial strategy, and therefore the court is unable to say that Cianciola's attorney was unreasonable. Thus, this court is unable to say that the court of appeals' decision was contrary to, or involved an unreasonable application of <u>Strickland</u>, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, and therefore Cianciola is not entitled to relief on this ground.

### 3. Failure to Object to Exclusion of Defense Witness

As discussed below, this court finds that the exclusion of defense witness Julie Aslin ("Aslin") was a reasonable exercise of discretion by the trial court. Therefore, to the extent that Cianciola seeks relief on the basis that his counsel's failure to object resulted in a forfeiture of this claim for later appellate review, Cianciola's contention must fail because he was not prejudiced by counsel's inaction.

### 4. Failure to Introduce Impeaching Evidence

Cianciola contends that his attorney should have called witnesses to contradict the victim's recount of a prior sexual assault that was introduced as other acts evidence. The court of appeals accepted Cianciola's attorney's explanation that he chose not to call these witnesses because doing so would place undue emphasis on this other incident without the possibility of significant gain in light of the fact that the testimony of these witnesses had already been discounted by a jury, as is

evidenced by the fact that Cianciola was convicted of this prior offense despite the testimony of these witnesses.

This court concurs with the conclusion of the court of appeals that the decision of Cianciola's attorney was reasonable trial strategy. Therefore, this court is unable to say that the court of appeals' decision was contrary to, or involved an unreasonable application of Strickland, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Therefore, Cianciola is not entitled to relief on this ground.

### 5. Failure to Object to Prosecution Closing Argument

As discussed below, this court finds no impropriety in the prosecutor's closing argument and therefore, the court is unable to say that it was unreasonable or prejudicial for Cianciola's attorney not to object. Therefore, Cianciola is not entitled to relief on this ground.

### 6. Failure to Conduct Proper Voir Dire

A juror stated during voir dire that her teenage daughter had recently been sexually assaulted. Cianciola's attorney did not ask any follow-up questions of this juror. During the Machner hearing, Cianciola's attorney testified that he saw nothing in the juror's demeanor to indicate that she could not be impartial. Further, it was Cianciola who wanted the juror to sit on the jury because he felt that her having a teenage daughter would be beneficial to him because she would know that teenagers lie.

Based upon these explanations, this court cannot say that Cianciola's attorney was ineffective. See Strickland, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."). Therefore, this court is unable to conclude that the court of appeals' decision was contrary to, or involved an unreasonable application of Strickland, or was based on an unreasonable determination of the facts

12
Case 2:05-cv-01264-AEG   Filed 02/11/09   Page 12 of 18   Document 24

evidenced by the fact that Cianciola was convicted of this prior offense despite the testimony of these witnesses.

This court concurs with the conclusion of the court of appeals that the decision of Cianciola's attorney was reasonable trial strategy. Therefore, this court is unable to say that the court of appeals' decision was contrary to, or involved an unreasonable application of Strickland, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Therefore, Cianciola is not entitled to relief on this ground.

### 5. Failure to Object to Prosecution Closing Argument

As discussed below, this court finds no impropriety in the prosecutor's closing argument and therefore, the court is unable to say that it was unreasonable or prejudicial for Cianciola's attorney not to object. Therefore, Cianciola is not entitled to relief on this ground.

### 6. Failure to Conduct Proper Voir Dire

A juror stated during voir dire that her teenage daughter had recently been sexually assaulted. Cianciola's attorney did not ask any follow-up questions of this juror. During the Machner hearing, Cianciola's attorney testified that he saw nothing in the juror's demeanor to indicate that she could not be impartial. Further, it was Cianciola who wanted the juror to sit on the jury because he felt that her having a teenage daughter would be beneficial to him because she would know that teenagers lie.

Based upon these explanations, this court cannot say that Cianciola's attorney was ineffective. See Strickland, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."). Therefore, this court is unable to conclude that the court of appeals' decision was contrary to, or involved an unreasonable application of Strickland, or was based on an unreasonable determination of the facts

in light of the evidence presented in the state court proceeding, and thus Cianciola is not entitled to relief on this ground.

## *B. Trial Court's Exclusion of Defense Witness*

The trial court excluded the testimony of Julie Aslin ("Aslin"), Cianciola's girlfriend, because the trial court determined that Cianciola violated the sequestration order during a phone call with Aslin the night before the defense planned for her to testify. Cianciola contends that the court should have made an inquiry into the nature of Aslin's intended testimony so as to be able to weigh the prejudicial effect of excluding her testimony and to consider whether alternative sanctions might be appropriate. Cianciola contends that by the court failing to do so, he was denied a fair trial.

The trial court ordered that the witnesses be sequestered. Specifically, it ordered "they're not to talk about this case or any of the questions or answers with anybody else." (Tr. 4 at 58.)

The record is clear that Cianciola and Aslin violated the court's sequestration order. (Tr. 5 at 3-14.) Cianciola and a friend of Aslin told Aslin what had occurred in court the day before, specifically informing Aslin of the victim's responses to questions and the content of opening statements. Further, Cianciola told Aslin that if she wanted to say something that was beyond the scope of a question she was asked while testifying, she should simply blurt out the information.

Although Cianciola's attorney did not formally proffer Aslin's testimony when the trial court was considering the appropriate remedy for the violation of the sequestration order, the court had nonetheless been presented with indications of the nature of Aslin's testimony. During his opening statement, Cianciola's attorney stated that Aslin would testify that contrary to the victim's allegations, there had been no bed in the room in which the victim alleged the assault occurred. (Tr. 4 at 88.) It also appears that the court was presented with the substance of Aslin's testimony in a Cianciola's written response to a motion in limine filed by the prosecution. (See Tr. 4 at 67.) Cianciola proffered to the court of appeals Aslin would have testified that the victim infrequently

visited Cianciola during the period the assaults were alleged to have occurred, and that with respect to the specific incident with which Cianciola was charged, he was not with the victim. (Ex. B at 16.)

> It is well settled that a court, in order to enforce a sequestration order, may in some circumstances exercise its discretion to disqualify an offending witness. See Holder v. United States, 150 U.S. 91 (1893); Taylor v. United States, 388 F.2d 786 (9th Cir. 1967). However, because of the availability of alternative sanctions to enforce the order, and because of the constitutionally based right of the defendant to relevant testimony in his favor, see Washington v. Texas, 388 U.S. 14 (1968); Braswell v. Wainwright, 463 F.2d 1148 (5th Cir. 1972), it is ordinarily an abuse of discretion to disqualify a witness unless the defendant or his counsel have somehow cooperated in the violation of the order. E.g., Braswell, [463 F.2d] at 1155; Taylor, [388 F.2d] at 788. Here the appellant himself violated the clear order, and we are satisfied that the trial court permissibly enforced the purpose of the order by disqualifying the witness to whom appellant had recited his testimony.

United States v. Torbert, 496 F.2d 154, 157-158 (9th Cir. 1974); see also United States ex rel. Clark v. Fike, 538 F.2d 750, 757 (7th Cir. 1976) (citing United States v. Schaefer, 299 F.2d 625 (7th Cir. 1962) ("[I]t is within the sound discretion of the trial court to allow a witness who has disobeyed a sequestration order to testify.")

This court is unable to say that it was unreasonable for the court of appeals' to conclude that the trial court's order precluding Aslin from testifying was an appropriate exercise of discretion. Cianciola and Aslin violated the court's clear order and thus the harsh sanction of entirely precluding Aslin from testifying was reasonable. Further, Cianciola has failed to demonstrate that Aslin's testimony would have been consequential. Notably, although the matters that Aslin was supposed to testify about, for example, the frequency of the victim's visits and the layout of the room where the assault occurred, were all matters that Cianciola could have testified about, he did not. Therefore, this court is unable to conclude that the court of appeals' decision was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, and thus Cianciola is not entitled to relief on this ground.

*C. Trial Court's Requirement of Expert Testimony as Foundation*

The trial court refused to permit Cianciola to present the testimony of numerous witnesses that he had a "normal" relationship with the victim during the time period of the alleged abuse. Cianciola contended that it was common knowledge that persons generally do not want to be around the person who is abusing them. (Tr. 4 at 68.) Thus, Cianciola sought to introduce evidence from numerous witnesses that the victim continued to voluntarily associate with Cianciola during the period the abuse occurred. The court determined that how a victim normally responds to sexual abuse is not a matter within the common knowledge of jurors, and thus Cianciola must present expert testimony to lay the proper foundation for the witnesses' testimony. (Tr. 4 at 69.)

"Generally, . . . the admissibility of evidence is a matter of state law and unless there is a resultant denial of fundamental fairness or the denial of a specific constitutional right, no constitutional issue is involved." Gross v. Greer, 773 F.2d 116, 119 (7th Cir. 1985) (quoting United States ex rel. Harris v. Illinois, 457 F.2d 191, 198 (7th Cir. 1972)).

> [E]videntiary questions are not subject to review by a federal court in a habeas corpus proceeding by a state prisoner unless there is an error of such magnitude as to deny fundamental fairness. . . . In this area, federal courts must proceed with caution. . . . To hold otherwise would put federal courts in the role of reviewing courts over the courts of the states even when no constitutional errors have been made.

Id. (quoting United States ex rel. Bibbs v. Twomey, 506 F.2d 1220 (7th Cir. 1974); citing Spencer v. Texas, 385 U.S. 554 (1967); U.S. ex rel. Clark v. Fike, 538 F.2d 750, 757 (7th Cir. 1976)); see also Marshall v. Lonberger, 459 U.S. 422, 438 n.6 (1983).

The trial court's decision was a reasonable exercise of its discretion. This court finds no error and certainly none that could potentially rise to the level of a denial of fundamental fairness. Therefore, this court is unable to conclude that the court of appeals' decision was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, or was based on an unreasonable determination of the facts in

15

light of the evidence presented in the state court proceeding, and thus Cianciola is not entitled to relief on this ground.

### *D. Double Jeopardy*

Cianciola contends that his sentence violates the Double Jeopardy clause of the Fifth Amendment because the court considered his conviction for similar conduct in Milwaukee County when fixing the sentence and likewise, the Milwaukee County court considered the Outagamie County allegations when fixing its sentence.

On October 9, 2001, Cianciola was convicted of First Degree Sexual Assault in Milwaukee County Circuit Court, and he was sentenced on December 4, 2001 to 12 years in prison. See Milwaukee County Circuit Court Case No. 2001CF3069, available at http://wcca.wicourts.gov. Cianciola contends that the court took into consideration the allegations of abuse occurring in Outagamie County when determining the sentence.

Cianciola was then convicted of the charge he challenges here in Outagamie County Circuit Court on April 17, 2002 and sentenced on July 29, 2002. (Ans. Ex. A.) At sentencing, Cianciola contends the court took into consideration Cianciola's conviction in Milwaukee County Circuit Court for similar conduct, as well as the numerous uncharged allegations of abuse, when imposing a 15 year sentence consecutive to the Milwaukee County sentence. The court has not been provided with a transcript of either sentencing hearing. However, the transcript is not necessary; the court shall accept Cianciola's representations as true.

Although Cianciola was convicted twice of the same criminal offense, i.e. First Degree Sexual Assault of a Child, Wis. Stat. § 948.02(1), involving the same victim, he was not subjected to double jeopardy. Each incident of sexual abuse was a distinct crime for which Cianciola could have been prosecuted and sentenced. Further, in fixing a sentence, a court may appropriately consider as an aggravating factor that the crime was part of a larger pattern of abuse. The Supreme

Court has specifically "rejected the claim that double jeopardy principles bar a later prosecution or punishment for criminal activity where that activity has been considered at sentencing for a separate crime." Witte v. United States, 515 U.S. 389, 398 (1995) (citing Williams v. Oklahoma, 358 U.S. 576 (1959)). Therefore, this court is unable to conclude that the court of appeals' decision was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, and thus Cianciola is not entitled to relief on this ground.

### *E. Prosecutor's Closing Argument*

Cianciola contends that the prosecutor's closing argument was improper because it "was dedicated to demoralizing the defendant." (Docket No. 2 at 11.) The court of appeals stated: "The prosecutor's closing argument constituted a reasonable comment on [Cianciola's] credibility. The prosecutor referred to [Cianciola] as an alcoholic and a liar, and he argued that adverse inferences should be drawn by [Cianciola's] violation of the sequestration order." The court continued that evidence of alcoholism was relevant because the victim testified she could smell alcohol during the assaults, that Cianciola admitted it might be possible that he committed the crime if he had blacked out as a result of intoxication, and the officer who interviewed Cianciola testified that he smelled alcohol on Cianciola's breath. (Ans. Ex. E at 4-5.) Further, Cianciola's violation of the sequestration order reflected upon Cianciola's credibility because it was an effort to obstruct justice that evidenced a guilty mind. (Ans. Ex. E at 5.) The court concluded, "The prosecutor's unflattering characterizations of [Cianciola] provide no basis for reversal because they are supported by a reasonable view of the evidence. (Ans. Ex. E at 5.)

> The leading Supreme Court decision on the question whether prosecutorial misconduct is so egregious that a new trial is required, as a matter of constitutional law, is Darden v. Wainwright, 477 U.S. 168 (1986). In Darden, the Court set forth six factors that should be considered in deciding this question: (1) whether the

17

> prosecutor misstated the evidence, (2) whether the remarks implicate specific rights of the accused, (3) whether the defense invited the response, (4) the trial court's instructions, (5) the weight of the evidence against the defendant, and (6) the defendant's opportunity to rebut. 477 U.S. at 181-82.

Howard v. Gramley, 225 F.3d 784, 793 (7th Cir. 2000). Even if a defendant is able to demonstrate that multiple of the Darden factors cut in his favor, a finding of prosecutorial misconduct does not automatically follow. Id. Rather, the most important factor is the weight of the evidence against the defendant. Id.

This court has reviewed the entire transcript of the prosecutors' closing argument and rebuttal and it does not find that either prosecutor's comments crossed the line to be inappropriate. With respect to the statements that Cianciola specifically challenges, the court finds all of these statements were appropriate characterizations and arguments based upon the evidence adduced at trial. Therefore, it is unnecessary for the court to consider the Darden factors. Having concluded that the prosecutors' argument and rebuttal were not improper, this court is unable to conclude that the court of appeals' decision was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, and thus Cianciola is not entitled to relief on this ground.

**IT IS THEREFORE ORDERED** that Cianciola's petition for a writ of habeas corpus is **denied**. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 11th day of February, 2009.

s/AARON E. GOODSTEIN  
U.S. Magistrate Judge